726 So.2d 817 (1999)
Joseph Michael ROBBIE, Appellant,
v.
Dwyn Daniels ROBBIE, Appellee.
Nos. 97-3430 and 97-3582
District Court of Appeal of Florida, Fourth District.
February 3, 1999.
*819 Alice E. Warwick of Alice E. Warwick, P.A., Coral Gables, and Linda Ann Wells, Miami, for appellant.
A. Matthew Miller of Miller, Schwartz & Miller, P.A., Hollywood, for appellee.
PER CURIAM.
This appeal arises from dissolution proceedings between the parties, which have already generated numerous appeals in this court. After this court's partial reversal of the underlying divorce judgment, see Robbie v. Robbie, 654 So.2d 616 (Fla. 4th DCA 1995)("Robbie I"), the case was remanded to the trial court for valuation and equitable distribution of the appreciation of one of the husband's non-marital assets, the Miami Sports Corporation. On remand to the trial court, the wife made certain discovery requests, and the trial court directed the husband to furnish the requested information. The trial court further awarded the wife temporary alimony for the first time on remand and ordered the husband to pay the same. The issues presented in this appeal concern the husband's subsequent decision to disobey the trial court's discovery orders and orders concerning the temporary alimony award, which resulted in the trial court's order holding the husband in contempt for his noncompliance.[1] Finding no error requiring reversal of the proceedings in the trial court, we affirm.
With regard to the husband's disobedience of the court's discovery orders, the husband contends that his conduct was justified because the court did not have jurisdiction to force compliance with the orders, which the husband urges were beyond the scope of this court's Robbie I remand instruction. We cannot agree with the husband that he was free to disregard the court's orders and not run the risk of contempt sanctions simply because he viewed the discovery requests as beyond the scope of the remand instruction in Robbie I. So long as the court's orders were entered with subject matter jurisdiction, the husband would still be required to obey those orders, even if erroneous. See Kaylor v. Kaylor, 466 So.2d 1253, 1254 (Fla. 2d DCA 1985); In re S.L.T., 180 So.2d 374, 377 (Fla. 2d DCA 1965).
While the husband argues that the trial court lacked jurisdiction to enter orders compelling discovery, he fails to recognize that even if the trial court and the wife's attorney misconstrued the extent of our instructions, our remand instructions would not foreclose all discovery, such as discovery necessary to establish the value of the Miami Sports Corporation. Therefore, the trial court had jurisdiction to order the discovery, even if the discovery requests were overbroad as the husband contends. The reason that a party may properly be held in contempt for failure to abide by an erroneous order is that the need for obedience to a court order outweighs the individual's temporary detriment. See Rubin v. State, 490 So.2d 1001, 1003 (Fla. 3d DCA 1986). The trial court did not abuse its discretion by sanctioning the husband for his contemptuous conduct in refusing to obey the orders of the trial court requiring answers to interrogatories and requests to produce.
The husband also challenges, on jurisdictional grounds, the order of contempt with respect to the non-payment of temporary alimony awarded after remand of the case from this court. He contends that the trial court did not have jurisdiction on remand to *820 order it. We conclude that, although the trial court may have entered an erroneous ruling awarding temporary alimony, as with the discovery order, it had jurisdiction, and the husband was not free to ignore the court's order.
In the instant case, the final judgment awarded the wife lump sum alimony payable in annual installments and "bridge-the-gap" alimony for a little over a year. Significantly for purposes of this appeal, the trial court specifically rejected the wife's claim for permanent periodic alimony. In Robbie I, the parties vigorously litigated on appeal the wife's entitlement to permanent periodic alimony and the amount of the "bridge-the-gap" alimony. This court affirmed all matters regarding the wife's support and reversed only the determination that the enhancement in the husband's interest in Miami Sports Corporation during the marriage was not a marital asset.
Our approval of the final judgment's provisions with respect to alimony, including the denial of permanent alimony, constituted the law of the case. See Mitzenmacher v. Mitzenmacher, 656 So.2d 178, 179-80 (Fla. 3d DCA 1995). On remand the trial court was bound by the affirmed determination that the wife had not proved that she was entitled to support alimony beyond the limited bridge-the-gap alimony awarded.[2] Thus, the wife's motion for temporary support, which merely alleged that she was in need of support and the husband had the ability to pay, would have required the trial court to make factual findings contrary to the determinations in the final judgment.
Despite the fact that the trial court's order on temporary alimony violated the doctrine of the law of the case, the court had jurisdiction over the proceeding. This is so because the law of the case doctrine is not a rule of jurisdiction; instead it is a "rule[] of convenience designed to prevent repetitious law suits over matters which have once been decided and which have remained substantially static." City of Miami v. Bell, 606 So.2d 1183, 1185 (Fla. 1st DCA 1992)(quoting Wagner v. Baron, 64 So.2d 267 (Fla.1953) (internal quotations omitted), quashed in part on other grounds, 634 So.2d 163 (Fla. 1994)). Because the trial court had jurisdiction over the remand proceedings, no matter how erroneous or unreasonable, the temporary alimony order of the trial court was required to be obeyed until reversed or vacated. See Kaylor, 466 So.2d at 1254. Although the order awarding temporary alimony could have been appealed under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iii), the husband failed to appeal it. He was thus required to obey the order. That does not preclude, however, the husband from appealing the temporary order after proceedings are complete on the final judgment.[3]
We disagree with the wife's assertion, which she forwarded in the trial court in support of her broad discovery requests and which she urges in this court as a ground for affirming the temporary alimony award, that our instruction in Robbie I that "the court may review the other awards made in fashioning an appropriate result" opened up all issues relating to the dissolution action. With that direction, we did not authorize a new determination of factual issues already *821 settled in the case. Nor would the parties be able to inject new issues into the action on remand. Our direction was no more than our recognition, frequently made in dissolution proceedings, of the trial court's discretion on remand:
With respect to the authority of the trial court on remand, we adopt the following principle announced by our sister court in Eagan v. Eagan, 392 So.2d 988, 990 (Fla. 5th DCA 1981):
In Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980), our Supreme Court observed that in a dissolution cases [sic] apportioning assets and providing necessary support are difficult problems and that the various procedural remedies which the trial court can use to solve these problems are interrelated and, from the trial judge's viewpoint, are generally all part of one overall scheme. It follows, therefore, that when a trial judge is found to be in error as to some aspect of his disposition the cause should be remanded with sufficient authority that he may again exercise broad discretion to modify the related matters within his original plan for division and support as may be necessary in order to do equity and justice between the parties in view of the changes required by the appellate opinion.
Goss v. Goss, 400 So.2d 518, 519 (Fla. 4th DCA 1981)(emphasis supplied).
On remand, the trial court was to determine the value of the husband's interest in the Miami Sports Corporation and what share of that interest the wife may be entitled to under equitable distribution principles. However, because we affirmed all support awards in Robbie I, the trial court was not free to determine that the wife was now entitled to permanent or temporary alimony for support.[4] This is so because those types of alimony were not part of the trial court's "original plan for division and support." Goss, 400 So.2d at 519.
Aside from his jurisdictional arguments for reversal, the husband also urges that the trial court's entry of sanctions against him was error because there was a motion for recusal pending before the judge. After the hearing on the contempt motion, but before the entry of the written order, the husband filed a motion to recuse. The trial court did not enter an order denying it until after the order of contempt was entered. When a judge is presented with a motion for disqualification, he or she should immediately rule on the sufficiency of the motion prior to passing on any other matters pertaining to the same litigants. See Fuster-Escalona v. Wisotsky, 715 So.2d 1053, 1054 (Fla. 4th DCA 1998)(trial court erred in passing on motion to dismiss for failure to prosecute while motion for recusal was pending); Loevinger v. Northrup, 624 So.2d 374, 375-76 (Fla. 1st DCA 1993)(when faced with a recusal motion, judge should resolve recusal motion before making any other rulings in case). While the wife correctly notes the exception that a trial judge may memorialize a prior oral order subsequent to the filing of a motion for recusal, see Fischer v. Knuck, 497 So.2d 240, 243 (Fla.1986), we cannot agree with the wife that the trial court had already ruled on the motion for contempt prior to the filing of the husband's recusal motion. The transcript of the hearing on the contempt motion indicates that the wife's counsel had appeared at the hearing with a written proposed order, which the trial judge did not agree with in several material respects. We cannot say that the appealed order is a memorialization of the trial judge's statements at the hearing. Accordingly, it was error for the court to grant the wife's contempt motion before deciding the recusal issue.
Having determined that the tardy decision on the recusal motion was error, we must decide whether the error was harmless. We have reviewed the husband's motion for disqualification and find that it clearly fails to *822 demonstrate a well-founded fear that he would receive unfair treatment by the trial judge. See Gieseke v. Grossman, 418 So.2d 1055, 1057 (Fla. 4th DCA 1982). At most, the motion indicates that the husband was unhappy with a number of the trial judge's rulings and with the judge's handling of the post-dissolution contempt proceedings. It is well settled that mere dissatisfaction with adverse rulings does not constitute a legally sufficient ground for a disqualification motion. See Jackson v. State, 599 So.2d 103, 107 (Fla.), cert. denied, 506 U.S. 1004, 113 S.Ct. 612, 121 L.Ed.2d 546 (1992). Given the legal insufficiency of the motion for recusal, the error in delaying consideration of it was harmless.
We distinguish Petrullo v. Petrullo, 604 So.2d 536 (Fla. 4th DCA 1992), in which we held that a late decision on a motion to recuse was not harmless where the trial judge did, in fact, grant the recusal motion three weeks after granting a motion for custody change that had been filed prior to the motion for disqualification. In Petrullo, the trial court conducted a hearing on the recusal motion, reserved ruling thereon for three weeks, and eventually granted the motion. The case at bar is distinguishable because the trial court ultimately denied the husband's motion to recuse prior to granting the wife's motion for contempt. Moreover, there is no indication in the record on appeal that the trial court's subsequent sua sponte recusal, two months after ruling on the husband's motion, was related in any way to the husband's motion which had already been ruled upon.
Lastly, we find no merit to the husband's claim of error with regard to the trial court's factual findings concerning the husband's attorney. At the hearing on the contempt order, the trial court explicitly stated that it was staying the contempt proceedings as to the attorney. Since there is no order finding the attorney in contempt, the trial court's statements concerning the attorney's conduct are not reversible in this appeal.
This is a hotly contested proceeding. It has gone through one trial and numerous appeals, and it appears that the wife is attempting to relitigate many of the issues settled in the first proceeding. On the other hand, the husband has failed to comply with many of the trial court's orders. We remind the trial court that it has discretion to deny either party his or her attorneys' fees if the court finds that the party's actions are frivolous, spurious or undertaken primarily to harass the adverse party. See Rosen v. Rosen, 696 So.2d 697, 701 (Fla. 1997).
Affirmed.
GUNTHER and WARNER, JJ., concur.
STONE, C.J., concurs specially.
STONE, C.J., concurring specially.
I concur in the majority opinion but add that I do not necessarily agree that a trial judge has no authority to award temporary support during the pendency of a petition for modification. Although I recognize that this appears to be a rule recognized in Saulnier v. Saulnier, 425 So.2d 558 (Fla. 4th DCA 1982), in my judgment, such a temporary decision, albeit discouraged, is better addressed on a case by case basis. This issue, however, need not be resolved here, and I comment only to indicate that I am not satisfied with applying Saulnier as a per se rule.
NOTES
[1] We note that we improvidently permitted the instant appeal of a contempt order to proceed as a direct appeal. We now redesignate it as an appeal from a non-final order. See Langbert v. Langbert, 409 So.2d 1066, 1067 (Fla. 4th DCA 1981); see also Badger v. Badger, 568 So.2d 79, 79 (Fla. 4th DCA 1990).
[2] "Bridge-the-gap" alimony is intended to smooth the transition between a higher standard of marital living and the standard that a spouse can provide for herself, and is typically for a very short period of time, such as in the instant case of just over a year of monthly payments. Cf. Blase v. Blase, 704 So.2d 741, 742 (Fla. 4th DCA 1998) (discussing purpose of rehabilitative alimony). It is meant for situations where the court finds that permanent alimony is not appropriate, and where no rehabilitation is requested or needed, as in this case where the wife presented no rehabilitative plan at trial. Cf. Anderson v. Anderson, 617 So.2d 1109, 1111 (Fla. 1st DCA 1993)(rehabilitative alimony reversed where there was no evidence in the record of a rehabilitative plan).
[3] That a petition for modification was pending also did not give the court any authority to award temporary alimony. In Saulnier v. Saulnier, 425 So.2d 558, 559 (Fla. 4th DCA 1982), we held that a trial court had no authority to award temporary alimony prior to final hearing in a post-judgment proceeding, as occurred in the case at bar. Instead, if the wife ultimately prevails on her petition for modification, alimony can be awarded retroactive to the date the petition was filed. See id.
[4] We can envision a case where we might reverse the award to the wife of substantial assets in equitable distribution, which on remand may require a trial court to review its denial of permanent periodic alimony since it may have been predicated on the availability of investment income from the asset distribution. When this is a possibility, we have often specifically authorized the trial court to review the alimony award on remand. See, e.g., Watford v. Watford, 605 So.2d 1313, 1315 (Fla. 4th DCA 1992). This type of factual scenario is not present in this case.